ORIGINAL

Rosemary M. Rivas (State Bar No. 209147)
rrivas@finkelsteinthompson.com
Danielle A. Stoumbos (State Bar No. 264784)
dstoumbos@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Donald J. Enright, Esq. (*pro hac vice application forthcoming*)
denright@zlk.com
**LEVI & KORSINSKY, LLP**
1101 30th St., NW Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121

Attorneys for Individual and Representative
Plaintiff Angelo Ciocca

ADR

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

CV12-00651

ANGELO CIOCCA, individually and on behalf of
all others similarly situated,

      Plaintiff,

    vs.

BERNARD T. MARREN, KAPIL K. NANDA,
WILLIAM H. WELLING, and OPTI, INC.,

      Defendants.

Case No.

**CLASS ACTION COMPLAINT**

Plaintiff Angelo Ciocca ("Plaintiff"), by his attorneys, alleges upon information and belief,

except for his own acts, which are alleged on knowledge, as follows:



1

1    1.    Plaintiff brings this class action on behalf of the public stockholders of OPTi, Inc. ("Opti"

2    or the "Company") against Opti's Board of Directors (the "Board" or the "Individual Defendants")

3    seeking equitable relief for their violations of Section 14(a) of the Securities Exchange Act of 1934 (the

4    "Exchange Act") and Rule 14a-9 promulgated thereunder ("Rule 14a-9"), and breaches of fiduciary

5    duty, arising out of the Board's announcement that it has unanimously approved the voluntary winding

6    up and dissolution of the Company.

7    2.    Opti was founded in 1989 as an independent supplier of semiconductor products to the

8    personal computer market. In September 2002, the Company sold its product fabrication, distribution

9    and sales operations to Opti Technologies, Inc., an unrelated third party, and the Company ceased

10   manufacturing, marketing and sales operations. Since then, the Company's strategy has been to pursue

11   licensing opportunities to resolve potential infringement of its proprietary intellectual property. During

12   fiscal year 2011 ending March 30, 2011, for example, the Company entered into several settlement and

13   licensing agreements totaling approximately $50.6 million on the core logic technology that the

14   Company had developed.

15   3.    On January 12, 2012, the Company filed a Schedule 14A preliminary proxy statement

16   (the "Proxy") with the Securities and Exchange Commission (the "SEC") pursuant to which the Board

17   announced that it has unanimously approved the voluntary winding up and dissolution of the Company

18   pursuant to a Plan of Liquidation (the "Proposed Liquidation"). The Proxy included a Consent

19   Solicitation Statement pursuant to which the Board is seeking approval of the Proposed Liquidation by

20   written consent in lieu of a meeting of shareholders.

21   4.    The Board has breached their fiduciary duties by approving the Proposed Liquidation.

22   The Proposed Liquidation is not in the best interests of the Company's shareholders. For example, and

23   as described in more detail below, by agreeing to the Proposed Liquidation, the Company is foregoing

24   future revenue streams that it could realize through the pursuit of patent infringement claims against

25   additional companies that are infringing on the Company's patents. The Company's shareholders are not

26   being adequately compensated in an amount that represents the true intrinsic value of the Company, as

2

the Proposed Liquidation will not take into account the value of the patent infringement claims that the Company has against additional companies that are infringing on the Company's patents.

5.     In addition, the Proxy fails to provide the Company's shareholders with material information and/or provides them with materially misleading information, thereby rendering the shareholders unable to make an informed decision regarding whether to consent to the Proposed Liquidation.

6.     The Individual Defendants have breached their fiduciary duties of loyalty, due care, independence, good faith and fair dealing, and Opti has aided and abetted such breaches by Opti's Board. Plaintiff seeks to enjoin the Proposed Liquidation unless and/or until Defendants cure their breaches of fiduciary duty.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), as this Complaint alleges violations of Rule 14a-9. This court has jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

8.     Venue is proper in this District because many of the acts and practices complained of herein occurred in substantial part in this District.  In addition, Opti maintains its principal executive offices in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Opti.

10.     Opti is a corporation organized and existing under the laws of the State of California. It maintains its principal corporate offices at 3430 W. Bayshore Road, Palo Alto, California 94303.

11.     Defendant Bernard T. Marren ("Marren") is and has been the President and Chief Executive Officer of the Company since May 1998. Marren also is Chairman of the Board and has served as a director since 1996.

12.     Defendant Kapil K. Nanda ("Nanda") has been a director of the Company since 1996.

1    13.    Defendant William H. Welling ("Welling") has been a director of the Company since

2  1998.

3    14.    Defendants referenced in paragraphs 11 through 13 are collectively referred to as

4  Individual Defendants and/or the Board.

5                          **CLASS ACTION ALLEGATIONS**

6    15.    Plaintiff brings this action on his own behalf and as a class action on behalf of all owners

7  of Opti common stock and their successors in interest, except Defendants and their affiliates (the

8  "Class").

9    16.    This action is properly maintainable as a class action for the following reasons:

10          (a)    The Class is so numerous that joinder of all members is impracticable. As of

11  January 10, 2012, OPTI has approximately 11.6 million shares outstanding.

12          (b)    Questions of law and fact are common to the Class, including, *inter alia*, the

13  following:

14

15                 (i)    Whether the Individual Defendants breached their fiduciary duties of

16                        undivided loyalty, independence, or due care with respect to Plaintiff and

17                        the other members of the Class in connection with the Proposed

18                        Liquidation;

19                 (ii)   Whether the Individual Defendants breached any of their other fiduciary

20                        duties to Plaintiff and the other members of the Class in connection with

21                        the Proposed Liquidation, including the duties of good faith, diligence,

22                        honesty and fair dealing;

23                 (iii)  Whether Plaintiff and the other members of the Class would be irreparably

24                        harmed were the Proposed Liquidation completed.

25                 (iv)   Whether Opti aided and abetted the Individual Defendants' breaches of

26                        fiduciary duty; and

27                 (v)    Whether the Class is entitled to injunctive relief or damages as a result of

28                        Defendants' wrongful conduct.

4

1         (c)     Plaintiff is committed to prosecuting this action, is an adequate representative of

2 the Class, and has retained competent counsel experienced in litigation of this nature.

3         (d)     Plaintiff's claims are typical of those of the other members of the Class.

4         (e)     Plaintiff has no interests that are adverse to the Class.

5         (f)     The prosecution of separate actions by individual members of the Class would

6 create the risk of inconsistent or varying adjudications for individual members of the Class and of

7 establishing incompatible standards of conduct for Defendants.

8         (g)     Conflicting adjudications for individual members of the Class might, as a

9 practical matter, be dispositive of the interests of the other members not parties to the adjudications, or

10 substantially impair or impede their ability to protect their interests.

11         (h)     Plaintiff anticipates that there will be no difficulty in the management of this

12 litigation. A class action is superior to other available methods for the fair and efficient adjudication of

13 this controversy.

14

15 **FURTHER SUBSTANTIVE ALLEGATIONS**

16     17.    Opti was founded in 1989 as an independent supplier of semiconductor products to the

17 personal computer market. In September 2002, the Company sold its product fabrication, distribution

18 and sales operations to Opti Technologies, Inc., an unrelated third party, and the Company ceased

19 manufacturing, marketing and sales operations.

20     18.    However, the Company believed that its patented technology was in unlicensed use, and

21 the Company has since been engaged in perfecting its intellectual property position, investigating

22 unlicensed use of its technology and developing and validating a strategy to pursue product licenses

23 from unlicensed users. The Company currently has thirty four issued United States patents based on

24 certain aspects of the Company's designs.

25     19.    The Company's current strategy has been to pursue licensing opportunities to resolve

26 potential infringement of its proprietary intellectual property in the core logic area. During fiscal year

27 2011 ending March 30, 2011, the Company entered into several settlement and licensing agreements

28 totaling approximately $50.6 million on the core logic technology that the Company had developed. The

5

vast majority of the fiscal year 2011 revenue relates to licensing activity with Advanced Micro Devices ("AMD") and Apple, Inc. ("Apple"). During fiscal year 2010, the Company also recorded net revenue of $650,000 relating to a license with VIA Technologies ("VIA").

20.     As of September 30, 2011, the Company's principal sources of liquidity included cash and cash equivalents of approximately $23 million, and net working capital of approximately $24.8 million. Opti holds a majority of its liquid assets in cash and cash equivalents for the purpose of financing its efforts to pursue licenses and claims relating to its intellectual property.

21.     As the Company has been successful in earning revenues through settlements and licensing agreements, from time to time, the Company has made distributions to its shareholders of funds that it believed unlikely to be required for the further pursuit of its legal strategy. For example, on July 6, 2010, the Company announced that its Board of Directors had declared a cash dividend of $0.75 per share on each share of the Company's common stock. The dividend was paid on August 12, 2010. On October 14, 2010, the Company announced that its Board of Directors had declared a cash dividend of $0.65 per share on each share of the Company's common stock. The dividend was paid on December 15, 2010.

22.     The Company currently has one litigation pending. On July 30, 2010, the Company filed a patent infringement lawsuit in the United States District Court for the Eastern District of Texas against VIA and Silicon Integrated Systems Corp. ("SIS") for infringement of two U.S. patents. The Company in its case against VIA and SIS is seeking damages or other monetary relief, including pre-judgment interest and awarding of Opti's attorney fees.

23.     In addition, the Company believes that there are additional companies that are infringing on the Company's patents. For example, as stated in the Form 10-K filed by the Company on June 29, 2011:

> Growth has continued in the PC market as computer and consumer electronics industries have converged, combining increased multimedia and communications capabilities. Today's systems increasingly offer more powerful microprocessors, highly integrated chipsets, integrated video, stereo sound, high-speed fax and modem communications and DVD.

*OPTi believes that the existing technology used in current generations of core logic chipsets may be infringing some of the patented technology that the Company had developed.*

\* \* \*

*The Company believes that there may be additional companies that may be infringing its patents. The Company is actively working to explore all possible arrangements to settle such infringements.* (emphasis added).

24.    As recently as November 14, 2011, as stated in the Form 10-Q filed with the SEC on that day (the "November 2011 10-Q"), the Company's "strategy is to pursue licensing opportunities to resolve potential infringement of its proprietary intellectual property in the core logic area."

25.    Meanwhile, the Company's largest shareholder, S. Muoio & Co. LLC ("SMC"), had recently indicated that it wished that the Company pursue a liquidation of the Company. As stated in the November 2011 10-Q:

> The Company's largest shareholder (SMC and its affiliates) has recently increased its ownership from 28% to 35% of the Company's outstanding common stock and has attempted to obtain representation on the Board of Directors. See Part II, Item 1 Legal Proceedings. Such shareholder has indicated in its public filings with the Securities and Exchange Commission that it may engage in discussions with the Company regarding the timing and characterization of cash distributions to shareholders and the potential orderly liquidation of the Company. The shareholder has also reserved the right to take any and all actions that it deems appropriate to maximize the value of its investment in the Company.

26.    Despite the Company's success in generating revenues through settlements and licensing agreements through the pursuit of patent infringement claims, the Board succumbed to SMC's will and inexplicably determined to pursue a liquidation of the Company.

27.    On January 12, 2012, the Company filed the Proxy pursuant to which the Board announced that it has unanimously approved the voluntary winding up and dissolution of the Company pursuant to a Plan of Liquidation, subject to the approval of the Company's shareholders. The Proxy included a Consent Solicitation Statement pursuant to which the Board is seeking approval of the Proposed Liquidation by written consent in lieu of a meeting of shareholders.

28.    As stated in the Proxy, if the Proposed Liquidation is approved, the Company plans to "take all actions to complete the liquidation and dissolution within the liquidation period, which shall

end by the last day of the third year ending after the close of the taxable year during which the first liquidating distribution is made (the 'Liquidation Period'), which shall be March 31, 2016."

29.     As further described in the Proxy, during the Liquidation Period, the Company will "pay or discharge all of the Company's liabilities and obligations." The Company's only assets consist of cash and patent infringement claims "which [the Company] intends to reduce to cash." As stated in the Proxy, "the Company shall distribute to its shareholders cash available for distribution in such manner as may be determined by the Company's Board of Directors in its sole discretion. Such distributions to the shareholders will be reduced by the Company's liabilities and obligations, including the expenses of the Company in connection with the resolution of pending litigation and the winding up process." The first liquidating distribution to the shareholders is "anticipated to be made in or about April 2012 in an amount to be determined at the sole discretion of the Board."

30.     The Board has breached their fiduciary duties by approving the Proposed Liquidation. The Proposed Liquidation is not in the best interests of the Company's shareholders.

31.     By agreeing to the Proposed Liquidation, the Company is foregoing future revenue streams that it could realize through the pursuit of patent infringement claims against additional companies that are infringing on the Company's patents. The Company's shareholders are not being adequately compensated in an amount that represents the true intrinsic value of the Company, as the Proposed Liquidation will not take into account the value of the patent infringement claims that the Company has against additional companies that are infringing on the Company's patents.

32.     On the other hand, if the Company continues operating as a going concern, the Company's shareholder would be better off. As described above, the Company has been successful in earning revenues through settlements and licensing agreements, and distributes unneeded cash to shareholders in the form of dividends. As described in a December 10, 2010 article on seekingalpha.com, this strategy provides very little risk to an investor, and usually allows the investor to recoup their investment within a year or two. As stated in the article:

> OPTI searches for patent infringement, then sues, and then collects either fees for damages or enters into a licensing agreement. After collecting damages or licensing revenue, the company usually distributes unneeded cash to shareholders. In fact, OPTI

8

usually keeps around $10 million of cash to keep the patent infringement process going, and eventually pays out the remaining amount to shareholders. In the past the company has done this quite well. Thus, once the initial investment has been recouped through cash distributions shareholders will profit from any future patent cases.

\* \* \*

[If the Company continues to successfully sue other organizations], shareholders should easily be able to recoup their investment within a year or two, while enjoying future streams of cash distributions; there seems to be very little, if any, risk involved with this outcome.

33.     Accordingly, the Proposed Liquidation is not in the best interests of the Company's shareholders.

34.     In addition, the Proxy fails to provide the Company's shareholders with material information necessary to make the statements that were made not misleading, and/or provides them with materially misleading information, thereby rendering the shareholders unable to make an informed decision regarding whether to consent to the Proposed Liquidation:

(a)     The Proxy states that "after considering various options available to the Company, the Board has determined that the greatest return for the shareholders would be obtained by an orderly winding up and dissolution of the Company," but fails to disclose what were the various options available to the Company that the Board considered. In addition, the Proxy fails to disclose what were the reasons and factors considered by the Board in determining that "the greatest return for the shareholders would be obtained by an orderly winding up and dissolution of the Company."

(b)     The Proxy fails to disclose any financial analyses that were presented to and/or considered by the Board in making the liquidation determination, and fails to present any financial projections that provided the basis of such analyses.

(c)     The Proxy fails to disclose whether the Board engaged in any discussions with SMC in the months leading up to the announcement of the Proposed Liquidation, and if so, the nature of the discussions;

(d)     The Proxy fails to disclose whether, and to what extent, the Board considered the wishes of SMC in determining to pursue the Proposed Liquidation;

9

(e)     The Proxy states that "ongoing attempts by the Board to pursue new business opportunities, including partnerships with other entities, have been unsuccessful," but fails to disclose what new business opportunities and partnerships the Board has attempted to pursue and the reasons they have been unsuccessful;

(f)     The Proxy States that if the Proposed Liquidation is approved, the Company "intends to reduce to cash" the Company's patent infringement claims, but fails to disclose how the Company intends to do so.

(g)     The Proxy States that if the Proposed Liquidation is approved, "the first liquidating distribution to the shareholders is anticipated to be made in or about April 2012 in an amount to be determined at the sole discretion of the Board," but fails to disclose the reasons the distribution is left to the "sole discretion of the Board," and how the Board intends to determine the amount that will be distributed.

35.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

36.     Plaintiff repeats all previous allegations as if set forth in full herein.

37.     Defendants have issued the Proxy with the intention of soliciting shareholder support of the Proposed Liquidation.

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

39.     Specifically, the Proxy violates the Section 14(a) and Rule 14a-9 because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

40.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make fully informed decisions on whether to consent to the Proposed Liquidation if such misrepresentations and omissions are not corrected.

## COUNT II

### Breach of Fiduciary Duty

### (Against the Individual Defendants)

41.     Plaintiff repeats all previous allegations as if set forth in full herein.

42.     As directors of Opti, the Individual Defendants stand in a fiduciary relationship to Plaintiff and the other public stockholders of the Company and owe them the highest fiduciary obligations of loyalty and care.

43.     As discussed herein, the Individual Defendants have breached their fiduciary duties to Plaintiff and the other public stockholders of the Companyby approving the Proposed Liquidation, which, as described above, is not in the best interests of the Company's shareholders and will not adequately compensate the Company's shareholders for the true value of the Company.

44.     As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Opti.

45.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Liquidation, to the irreparable harm of the Class.

46.     Plaintiff and the Class have no adequate remedy at law.

## COUNT III

### Breach of Fiduciary Duty -- Disclosure

### (Against the Individual Defendants)

47.    Plaintiff repeats all previous allegations as if set forth in full herein.

48.    The fiduciary duties of the Individual Defendants in the circumstances of the Proposed Liquidation require them to disclose to Plaintiff and the Class all information material to the decisions confronting Opti's shareholders.

49.    As set forth above, the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions.

50.    As a result, Plaintiff and the Class members are being harmed irreparably.

51.    Plaintiff and the Class have no adequate remedy at law.

## COUNT IV

### Aiding and Abetting

### (Against Opti)

52.    Plaintiff repeats all previous allegations as if set forth in full herein.

53.    As alleged in more detail above, Opti is well aware that the Individual Defendants have not sought to obtain the best available transaction for the Company's public shareholders. Opti aided and abetted the Individual Defendants' breaches of fiduciary duties.

54.    As a result, Plaintiff and the Class members are being irreparably harmed.

55.    Plaintiff and the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

(A)    Declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)    Declaring that the Proxy is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

12

1         (C)     Enjoining, preliminarily and permanently, the Proposed Liquidation;

2         (D)     In the event that the Proposed Liquidation is consummated prior to the entry of

3 this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

4         (E)     Directing that Defendants account to Plaintiff and the other members of the Class

5 for all damages caused by them and account for all profits and any special benefits obtained as a result

6 of their breaches of their fiduciary duties;

7         (F)     Awarding Plaintiff the costs of this action, including a reasonable allowance for

8 the fees and expenses of Plaintiffs' attorneys and experts; and

9 Granting Plaintiff and the other members of the Class such further relief as the Court deems just and

10 proper.

11 DATED: February 9, 2012               Respectfully submitted,

12

13

14                        **FINKELSTEIN THOMPSON LLP**

15

16                  By: Danielle A. Stoumbos

17                        Rosemary M. Rivas
                              Danielle A. Stoumbos

18                        100 Bush Street, Suite 1450
                              San Francisco, California 94104

19                        Telephone: (415) 398-8700

20                        Facsimile: (415) 398-8704

21                        **LEVI & KORSINSKY, LLP**

22                        Donald J. Enright, Esq.
                              1101 30th St., NW Suite 115

23                        Washington, DC 20007
                              Telephone: (202) 524-4290

24                        Facsimile: (202) 333-2121

25                        Counsel for Individual and Representative

26                        Plaintiff Angelo Ciocca

27

28

13

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

I, Angelo Ciucca duly certifies and says, as to the claims asserted under the federal

securities laws, that:

1.      I have reviewed a complaint filed in this action and authorize its filing.

2.      I did not purchase the security that is the subject of this action at the direction of

plaintiff's counsel or in order to participate in this private action.

3.      I am willing to serve as a representative party on behalf of the class, including

providing testimony at deposition and trial, if necessary.

1.      4.      My transaction(s) in OPTi, Inc securities which are the subject of this litigation

during the class period set forth in the complaint are as follows:

| Security | Date of Transaction | Number of Shares Purchased or Sold | Cost/Proceeds | |
|----------|---------------------|-----------------------------------|---------------|---|
| OPTi, Inc | 4/18/2000 4/24/2000 | 6500 54 6 | 10 5PV. 6680. | |
| OPTi, Inc | 4/25/2000 | 5000 | 8/15 | 8/50 |
| OPTi, Inc | 6/7/2000 | 6500 | 11247 | |
| OPTi, Inc | 9/22/2000 | 3000 | 4480 | |

5.      Within the last 3 years, I have not served as a class representative in any federal

securities fraud case.

6.      I will not accept any payment for serving as a representative party on behalf of the

class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court,

including any award for reasonable costs and expenses (including lost wages) directly relating to the

representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct. Executed this

_8_ day of _FEBRUARY_

_Google Ocean Sea Food — President_